**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**TAMARA A. BLUE**                                                                           **PLAINTIFF**

**v.**                                                               **CIVIL ACTION NO.: 4:25-cv-169-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                                 **DEFENDANT**

**ORDER REVERSING AND REMANDING**

This matter is before the court on Plaintiff's complaint [Doc. 1] for judicial review of the

Commissioner of the Social Security Administration's denial of a request for SSI benefits. The

parties have consented to entry of final judgment by the United States Magistrate Judge, with any

appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative

transcript, the briefs of the parties, and the applicable law, the undersigned finds the Commissioner's

decision is not supported by substantial evidence and should be and is hereby **REVERSED AND**

**REMANDED.**

**Facts**

Plaintiff, Tamara A. Blue, filed an application in the present matter in March 2022, alleging

disability since September 21, 2021,[1] due to a hole in her heart, a broken pelvis, a broken hip,

breathing problems, left knee problems, head trauma and depression. Tr. 178, 528. Plaintiff's

application was denied at the initial level in December 2022, and again at the reconsideration level

in December 2023. Tr. 242, 248. Plaintiff requested and was granted a hearing, which was held in

June 2024. Tr. 81-110. Following the hearing, the ALJ issued a decision in June 2024, finding

Plaintiff was not disabled since December 15, 2023, the amended alleged onset date, through June

---

[1] The alleged onset date was later amended to December 15, 2023.

21, 2024, the date of the ALJ's decision. Tr. 196-209.

In September 2024, the Appeals Council remanded this matter for further proceedings. Tr. 215-218. The remand hearing was held on February 11, 2025. Tr. 111-138.

Seven days prior to the remand hearing, on February 4, 2025, Plaintiff's attorney wrote a letter to ALJ Roger Lott to advise that some of Plaintiff's medical evidence was still outstanding and would not be presented to the Court five days prior to the scheduled hearing. Tr. 909. The correspondence addressed to the ALJ identified Life Help as one of the places with outstanding medical evidence. *Id.* The letter was sent via e-mail and stated, in relevant part, as follows:

> Dear Judge Lott,
>
> Pursuant to 20 CFR Section 404.935 et seq and 20 CRF (sic) 416.1435, I am informing the Court that the following medical evidence is still outstanding and will not be presented to the Court five business days prior to the scheduled hearing:
>
> 1. Life Help
> 2. Cassidy Bayou
> 3. Stern Cardiovascular
> 4. Baptist Hospital
> 5. Pain Treatment Center of America
>
> As you are aware, 20 CFR 404.935 et seq and 20 CRF (sic) Section 416.1435 gives the claimant the right to inform the Court about or submit any written evidence. This letter should be considered notice informing the Court about medical records that exist and we have not been able to obtain.
>
> Claimant through counsel actively and diligently sought the evidence from the above sources and the evidence was not received as of the date of this letter. Therefore, Claimant informs the Court of the existence of this evidence.
>
> Our office has requested these records in advance. We are anticipating that we will have all of our records by the date of the hearing. We are requesting that this will be sufficient notice to have the aforementioned records admitted into evidence.

Tr. 909.

At the February 11, 2026, hearing, Plaintiff, represented by her attorney, testified, and a vocational expert also testified. At the outset of the hearing on February 11, 2026, the following

2

discussion occurred between Plaintiff's counsel and the ALJ regarding outstanding medical records that had not yet been received:

> ALJ: Do you know of any additional evidence that needs to be submitted at this point, sir?
>
> ATTY: Yes. Life Help Mental Health, and let me detail that we have requested the records. I went to Grenada. We requested them one time, and they said they wouldn't accept a copy of the release. So I took an original release to Grenada. They again said they needed pre-payment. So we gave our credit cards, and the machine was not working, so we had to send them cash, which we did, and but we still don't have the records. So – and that is what we – we're attempting to get updated mental records. I think we do have an assessment from Life Help, and we've got mental records but in medicine, but we don't have all of it. So maybe we
>
> ALJ: Okay.
>
> ATTY: I drove to Grenada myself with the form. So, you know –
>
> ALJ: We will come back to it at the end of the hearing if necessary, but I'll certainly grant you some time to get those records if we need to do so. All right. So will you waive the reading of the issues?

Tr. 115-16.

At the conclusion of the hearing, the following exchange occurred between counsel and the ALJ:

> ALJ: Thank you for your testimony, Ms. Bruff. Ms. Blue, that's going to conclude your hearing. I need to go back at this time and review all of the evidence in the file in light of what I've heard today. Mr. Reynolds, I am going to go ahead and keep the record open for an initial 15 days to see if we can get those Life Core [sic] records in. If you need more time than that, just let me office know, and I can grant you some additional time. But considering –
>
> ATTY: [INAUDIBLE], Your Honor, [INAUDIBLE] significant time since there was a mental evaluation on her. So, I will – but I'll await these records and get those to you as soon as they arrive, and we'll go from there. And I note that the heart impairment has – seemed to become more clear also in this time. But Your Honor, I'll get these in, and we'll go from there.
>
> ALJ: Sounds like a plan. Ms. Blue, as I mentioned, ma'am, *I'm going to wait to get those additional records submitted before I make a decision*, but as soon as we have everything in the file, and I get a chance to look at it, I'll make a decision in your

3

case and have it mailed out to you. Okay?

Tr. 137-38 (emphasis added).

Despite this exchange at the hearing, the evidence was submitted but not exhibited or considered by the ALJ and the record was closed. The new records from Life Help consist of 44 pages of records from May 2024 through February 2025, and an updated Medical Evidence of Record – Medical Assessment of Ability to do Work – Related Activities (Mental) completed by Jeanette Nolette, LPC dated February 21, 2025.[2] The ALJ did not reference nor exhibit these new records or the updated medical assessment, but the ALJ *did* have access to a prior Medical Assessment of Ability to Do Work-Related Activities (Mental) statement by Jeanette Nolette, LPC, dated April 26, 2024, which was made part of the record at Tr. 1321.[3]

---

[2] Included in the 44 pages are two treatment records from February 21, 2024, and March 19, 2024, that were already exhibited.

[3] In comparing the two medical assessments, it is apparent that the first April 2024 statement has no handwritten notes. The second Medical Assessment of Ability to Do Work-Related Activities (Mental) statement dated February 21, 2025 (which was not made part of the record) (Tr. 12-14), has hand-written and detailed notes that state, "Tamera's mental health has been deeply affected by her health in that the pain she deals with daily has caused her to become depressed," and "Tamera has attempted to work on several occasions since her accident. She is in so much pain that she can't work for any long period of time. She has to depend on others at times to pay her bills. She desperately needs independence in order to get into the mind frame of not being depressed all the time. Please consider awarding her disability at this time." Tr. 13-14.

     The more recent February 2025 assessment also includes the finding that claimant had no ability to "complete a normal workday and workweek without interruptions from psychologically based assumptions."[3]

     A side-by-side comparison of the April 2024 assessment and the February 2025 assessment does reveal some improvement on the checklist portion of the assessment, including a finding of "good" in February 2025 that was previously marked "poor" in April 2024 with regard to "restriction of activities of daily living," "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner," "understand, remember, and carry out short and simple instructions," "make simple work-related decisions," "behave in an emotionally stable manner," "related predicable in social situations," and "demonstrate reliability." The February 2025 form was also changed to "none" with regard to "episodes of decompensation (lasting 2 weeks or more within a one year period)," when it was previously marked "poor." *See* Tr. 12-14, 1321-23.

     However, there was also some worsening on the February 2025 assessment, as Plaintiff was found to have poor ability to "understand, remember and carry out short and simple instructions," and no ability to "complete a normal workday and workweek without interruptions from psychologically based assumptions." *Id.*

     Moreover, the Court finds it instructive to delve deeper into a discussion of the remaining unexhibited records from May 2024 through February 2025. These records demonstrate Plaintiff's depression and mental health impairments and were considerably different than the 33 pages of Life Help records the ALJ previously had access to in Exhibit D15F, ranging from August 9, 2023, through the first assessment dated April 2024.

     For example, on August 9, 2023, the impression from Plaintiff's Life Help visit indicated that Tamera uses coping skills, but her mother is so mean to her that it is hard to not feel depressed. Tr. 1297-98. On March 8, 2023, the assessment included that Tamera was making some progress and has taken some of the stressors out of her life. Tr. 1303. On January 23, 2024, the assessment included a "breakthrough in that she has never talked about her fear

In his remand decision, the ALJ issued a five-step finding concluding that Plaintiff was not disabled during the period from December 15, 2023, the amended alleged onset date, through March 17, 2025, the date of the ALJ's decision. Tr. 62-73.[4]

In particular, and of relevance to the instant appeal, at step two, the ALJ determined that Plaintiff had the following severe impairments: history of stenotic cardiac injury, history of pelvis and left hip fractures status post-surgical repair with residual effects, degenerative disc disease (DDD) of the lumbar spine, asthma and major depressive disorder. Tr. 65. The ALJ then determined that despite Plaintiff's impairments, she retained the following RFC and could:

> perform sedentary work, except she could lift/carry/push/pull 10 pounds occasionally and less than 10 pounds frequently, she could stand/walk for 2 hours in an 8-hour workday, she could sit for 6 hours in an 8-hour workday, she could never climb ladders, ropes, or scaffolds, she could occasionally climb ramps and stairs, she could occasionally stoop, crouch, crawl, and kneel, she would need to avoid working around unprotected heights, hazardous moving machinery, and

concerning her health, specifically, her heart." Tr. 1307. On February 22, 2024, the assessment was that Tamera was making good progress, and experiencing less depression, anxiety, and anger. Tr. 22; 69. On March 20, 2024, the assessment was that Tamera is experiencing some depression at times, but overall doing well. These records above were considered by the ALJ in formulating his opinion. Tr. 69; Exhibit D15F. In particular, in the ALJ's opinion, he found:

> Regarding mental issues, the records indicate the claimant's main issues appears to have to do with her mother.

Tr. 71-72.

But, by May 7, 2024, the Life Help records that were **not exhibited** reveal an assessment that Tamera continues to experience depression on a daily basis. The summary included a statement that "Tamera indicated that she has been more depressed lately because she continues to experience pain and other health issues on a daily basis." Tr. 28. The May 28, 2024, July 23, 2024, August 21, 2024, and September 19, 2024, notes also indicated that she continues to experience depression and anxiety on a daily basis. Tr. 31; 34; 37; 41. Several unexhibited treatment notes also relate the claimant's depression *directly to* her constant pain. Tr. 37; 44; 47; 48; 50; 54.

[4] Using the five-step sequential analysis in 20 C.F.R. § 416.920(a), at step one, the ALJ found the Plaintiff had not engaged in substantial gainful activity from December 15, 2023, the amended alleged onset date. Tr. 65. At step three, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or equaled the criteria for any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). Tr. 65. Next, at step four, the ALJ found that Plaintiff did not have any past relevant work. Tr. 72. At step five, after considering the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform the requirements of representative occupations that exists in significant numbers in the national economy, including: eye glass assembler, DOT#713.684-038, unskilled work (SVP-2) performed at a sedentary exertional level, with 24,100 jobs in the national economy; final assembler, DOT#713.687-018, unskilled work (SVP-2) performed at a sedentary exertional level, with 40,000 jobs in the national economy; and, as a weigher, DOT#737.687-026, unskilled work (SVP-2) performed at a sedentary exertional level, with 24,100 jobs in the national economy. Tr. 72. The VE testified the claimant could have no more than 1 absence per month before work is precluded.

> concentrated exposure to respiratory irritants such as dusts, fumes, gases and odors, she could understand, remember, and carry out simple instructions and perform simple, routine, repetitive tasks, she could sustain attention, concentration and persistence on task for 2 hour periods sufficient to complete an 8-hour workday with normal and customary breaks, she could have occasional interaction with supervisors and coworkers, but never with the general public, and she can adapt to occasional, simple, gradually introduced changes to the workplace and work processes.

Tr. 66-67.

As concerned her medical history, the ALJ reviewed a July 23, 2022, consultive exam by Dr. Jane Eason that revealed, among other findings, that Plaintiff had a reduced range of motion of the lumbar spine. Tr. 68. She was able to get up and out of the chair without difficulty. *Id.* She was able to get on and off the exam table without difficulty. *Id.* She had a normal gait and ambulated without difficulty and without an assistive device. *Id.* The ALJ also reviewed a November 1, 2022, mental status evaluation by Dr. Pamela Buck. *Id.* She was diagnosed with a major depressive order, mild. *Id.*

On April 1, 2024, the claimant presented with complaints of lower back and abdominal pain. Tr. 69. On exam, she had a smooth gait and upright posture. *Id.* On April 15, 2024, the claimant had lumbar spine x-rays showing moderately severe L5-S1 disc degeneration. Tr. 70. On May 23, 2024, the claimant stated that she was still having hip and back pain but the pain was not as severe and occurring less frequently. *Id.* On January 22, 2025, the claimant presented to Pain Treatment Center of America with complaints of chronic pain, chest pain, and lower back pain. *Id.* She was assessed with chronic pain syndrome, rib pain, lumbar spondylosis, and long term use of opiate analgesic. *Id.*

Concerning the submission of the additional medical records, the ALJ's decision confusingly stated:

> If the claimant wishes that written evidence be considered at the hearing, then the

claimant must submit or inform the Administrative Law Judge about the evidence no later than five business days before the date of the scheduled hearing (20 CFR 416.1435(a)). Pursuant to 20 CFR 416.1435(b), if the claimant misses this deadline but submits or informs the Administrative Law Judge about written evidence before the hearing decision is issued, the Administrative Law Judge will accept the evidence if: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the Administrative Law Judge about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the Administrative Law Judge about the evidence earlier.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge finds that the requirements of 20 CFR 416.1435(b) are satisfied and admits this evidence into the record.

Tr. 62-63.

However, the ALJ did not otherwise reference the same or include them as part of the record.

Following the remand hearing and the issuance of the ALJ's second unfavorable decision finding the Plaintiff was not disabled since December 15, 2023 (the amended alleged onset date), through March 17, 2025, (the date of the ALJ's decision) (Tr. 73), on August 21, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's March 17, 2025, decision. Tr. 1-5.

In its decision, the Appeals Council stated as follows:

You submitted Medical Evidence of Record from NW MS Regional Medical Center, dated July 27, 2025 (2 pages) Medical evidence of Record from Life Help dated February 21, 2024 through February 7, 2025 (44 pages); and a Medical Evidence of Record- Medical Assessment of Ability to do Work – Related Activities (Mental) completed by Jeanette Nolette, LPC dated February 21, 2025 through February 21, 2026 (3 Pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

Tr. 2.

This action followed.

7

**Law and Analysis**

Plaintiff has raised three issues on appeal, essentially as follows: (1) whether the ALJ erred by failing to adequately develop the record when he omitted any reference in his decision to the actual medical records—or inclusion of them in the record—from Life Help for the time period May 2024 through February 2025. This was significant since the February 2025 medical assessment of Jeanette Nolette, LPC, emphasized the deleterious mental effects of increasing pain; (2) whether the Appeals Council erred when they found that consideration by the ALJ of the medical records from Life Help dated May 2024 through February 2025 would not, with reasonable probability, have changed the ALJ's decision; and (3) whether the ALJ erred in his consideration of Plaintiff's arthritis and his assessment of the RFC, in light of the 2024 x-ray revealing moderately severe L5-S1 findings, subsequent repetitive and increasing back pain complaints and a most recent diagnosis of chronic pain syndrome, all assessed without the benefit of a timely medical consult.[5] In her brief, Plaintiff, with one exception,[6] argues the merits of each issue.

---

[5] The undersigned finds Plaintiff's Issue 3 argument in her brief and citation to this Court's decision in *Perry v. Commissioner*, 3:20-cv-116-MPM-DAS, to be compelling, where Plaintiff argued as follows:

> In *Perry v. Commissioner*, where the Report and Recommendation was adopted by this court, and that is virtually indistinguishable from this present case the Court stated, "It is perfectly appropriate for an ALJ to list abilities and limitations that vary from any expert opinion, precisely because the ALJ is required to consider all the evidence in the record, including lay testimony. It is quite another matter, however, for an ALJ to assess an RFC when substantial, apparently significant medical records have not been subjected to any expert review and no expert opinion relating to the records is in the record." [emphasis added]. *Id.* at Doc# 24 Page 7- 8. The Report and Recommendation further states, "Because the ALJ assessed an RFC based on his interpretation of the medical records, he impermissibly 'played doctor' and his decision is not supported by substantial evidence. The plaintiff argues the ALJ should have ordered a consultative examination because of the December 2018 MRI which indicates lumbar problems.

[Doc. 12] at 12.

[6] The title of Plaintiff's third assignment of error contained a typo and was entitled, "Did the ALJ err in his consideration of Plaintiff's arthritis and the RFC in this case?" However, the substantive argument on pages 11 and 12 of Plaintiff's brief instead addressed Plaintiff's x-ray from April 15, 2024, which showed moderately severe L5-S1 findings, and pain treatment center records that Plaintiff argues should have been subject to medical review. The

On the other hand, inexplicably, the Commissioner's brief does not even address Issues 1 or 3. Rather, the entirety of the Commissioner's brief is devoted to Issue 2 and a discussion of whether there is substantial evidence to support the Appeals Council's finding that had the ALJ considered the Life Help records from May 2024 through February 2025, it would probably not have resulted in his reaching a different decision on disability. In this regard, the Commissioner maintains that the new Life Help records do not reflect a materially worse mental state than reflected in the prior Life Help records already considered by the ALJ. *See* n.3 *supra* for comparison.

In general, a party's failure to address an issue raised and argued on appeal waives any argument on the issue. *See Stokes v. Comm'r of Soc. Sec. Admin.*, No. 1:23CV122-RP, 2024 WL 3831090, at *3 (N.D. Miss. Aug. 14, 2024). In *Stokes*, the Court found that by failing to brief the relevant issues, the Commissioner waived any arguments against them. *Id.* The arguments to which the Commissioner failed to respond were not off-hand, passing remarks made in the context of broader arguments, nor were they "facially devoid of merit and easily disposed of without the benefit of adversarial critique." *Id.; see also Magee v. Life Ins. Co. of North America*, 261 F.Supp.2d 738, 748 n.10 (S.D. Tex. 2003) (finding that "failure to brief an argument in the district court waives that argument in that court").

---

Commissioner's brief does not even remotely acknowledge Plaintiff's substantive Issue 3 argument, and instead, simply states:

> Here, Plaintiff merely states that the ALJ's consideration of Plaintiff's arthritis is not supported by substantial evidence in this case. Pl. Br. at 10. Plaintiff does not point to any diagnosis of arthritis or any other treatment notes concerning arthritis, so it is unclear whether Plaintiff is alleging an error at step two or some other error regarding Plaintiff's arthritis. Notably, the Plaintiff did not allege that her disability was due, in part, to limitations based on arthritis.

[Doc. 17] at 7-8.

As applied in this case, such waiver results in this Court concluding with regard to Issue 1 that the ALJ erred in not referencing or making a part of the record the Life Help records dated from May 2024 through February 2025. It further results in this Court concluding, in keeping with Plaintiff's unopposed argument as to Issue 3, that the ALJ's failure to have obtained a medical opinion as to the significance of the 2024 x-ray revealing moderately severe L5-S1 findings, the Life Help records dated from May 2024 through February 2025 reflecting increasing back pain and the very recent diagnosis of chronic pain syndrome left the ALJ "playing doctor," and as a consequence, produced an RFC that the Court cannot conclude is supported by substantial evidence.

Although the Court need not address Issue 2 to order remand due to the glaring errors discussed on Issues 1 and 3 herein, the undersigned finds the Commissioner's response to the second issue to be unpersuasive. The Commissioner argues that the Appeals Council properly considered the post-hearing evidence submitted by the Plaintiff in compliance with the applicable regulations. [Doc. 17] at 4. The Commissioner argues that the unexhibited treatment notes "include evidence the Plaintiff was improving and doing well, and they include unremarkable mental status exams, despite some instances of a depressed and anxious mood and a restricted affect." *Id.* at 5. However, it appears to the undersigned that the Commissioner has downplayed the treatment notes discussed above in n.3 and how Plaintiff's complaints seemingly went from being related to interpersonal relationships with her mother pre-March 2024, to the increased severity of the alleged physical pain, and how that relates to Plaintiff's depression and anxiety in the unexhibited Life Help records post-May 2024.

Therefore, the Court finds that the case must be remanded due to lack of substantial evidence resulting from the culmination of errors discussed in detail herein, which creates

reversible error in this case inasmuch as the multiple errors undermine the Court's confidence in the outcome of this case, and the undersigned is unable to find that substantial evidence exists to support the Commissioner's decision in this case.

### Conclusion

Mindful of the deference due to the agency decision, the Court nevertheless, finds error and REVERSES AND REMANDS this case for further administrative proceedings.

**SO ORDERED,** this the 22nd day of May, 2026.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE

11